## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## (ATLANTA DIVISION)

| | |
|---|---|
| YULANDA DAVIS,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION<br>SERVICES, LLC,<br><br>　　　　　　Defendant. | Case No.:<br><br>**COMPLAINT AND DEMAND FOR<br>JURY TRIAL**<br><br>**1. FCRA, 15 USC §1681 *et seq.*** |

Plaintiff Yulanda Davis ("Plaintiff"), through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 et seq. against Defendant Equifax Information Services, LLC ("Equifax" or "Defendant").

## <u>INTRODUCTION</u>

1. Plaintiff's Complaint alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 et seq. against Defendant Equifax LLC, a consumer reporting agency, for failure follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's "consumer reports" as defined in 15 U.S.C. § 1681a(d), and consequently reported inaccurate information about Plaintiff. "Consumer reports" under 15 U.S.C. §

1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

## JURISDICTION AND VENUE

2. The District Court has federal question jurisdiction because this action arises out of violations of federal law. 28 U.S.C. § 1331. Jurisdiction is also proper pursuant to 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court.)

3. Venue in this District is proper pursuant to 28 U.S.C. §1391(b)(2) because Defendant regularly transacts business within this District, is otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

4. Plaintiff Yulanda Davis is a natural person residing in the city of Covington in Newton County, Georgia.

5. Plaintiff is a ("consumer") as defined by the FCRA, 15 U.S.C. §1681a(c).

6. Defendant Equifax is a *credit reporting agency*, as defined in 15 USC

1681a(f).  On information and belief, Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer reports*, as defined in 15 USC 1681a(d), to third parties. Equifax can be served through its principal place of business located at 1550 Peachtree Street NW, Atlanta, Georgia, 30309.

7.  Upon information or belief Equifax disburses *consumer reports* to third parties under contract for monetary compensation.

8.  At all relevant times, Equifax acted through duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

9.  Any violation by Equifax was not in good faith, was knowing, negligent, willful, and/or intentional, and Equifax did not maintain procedures reasonably adapted to avoid any such violation.

## FACTUAL ALLEGATIONS

10. Defendant Equifax reports consumer information about Plaintiff and other consumers through the sale of consumer reports.

11. Defendant Equifax's consumer reports generally contain the following

information: (i) *Header/Identifying Information*: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers' (ii) *Tradeline Information*: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) *Public Record Information*: this section typically includes public record information, such as bankruptcy filings; and (iv) *Credit Inquiries*: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

12. Defendant Equifax gains access to consumer information from various sources, including furnishers who provide consumer information to Defendants, and information Defendants independently source themselves or through third party providers/vendors or repositories, including computerized reporting services like PACER and Lexis/Nexis.

13. The information reported by Defendant Equifax contributes to consumer creditworthiness, including their FICO scores, which are calculated using information contained in Defendants' consumer reports.

14. The vast majority of financial services lenders (e.g., banks, creditors, lender)

rely upon consumer reports, FICO scores and other proprietary third-party algorithms—"scoring" models—to interpret the information in a consumer report.

15. These algorithms use variables or "attributes" derived from the consumer report to calculate a "credit score", which untimely determines consumer creditworthiness.

16. FICO scores factor the following: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and credit mix (10%).

17. The "amount of debt owed" is a major factor in a consumer's credit score; by reporting a debt as outstanding when it is in fact discharged, a CRA creates an impression that the Amount of currently owed debts is higher than it actually is, thereby impacting a consumer's credit score.

18. When the "amount of debt owed" is more than 10% of the credit limit, the "credit utilization" negatively impacts credit scores.

19. Lenders also consider a consumer's debt-to-income ratio (DTI) based on the total amount of debt reported by Defendants in consumer reports.  DTI compares the total amount a consumer owes to the total amount a consumer earns.

20. A consumer's income, however, is not included in their consumer report or

scores; only their amount of debt is.

21. Lenders consider a consumer's DTI as an indicator of whether a creditor will approve financing and the credit terms thereof.

22. The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for consumers to obtain credit, and the worse the credit terms will be (e.g., higher interest, lower credit limits).

23. Upon information and belief, a consumer who has obtained a bankruptcy discharge and has a consumer report that is reporting outstanding balances after their bankruptcy discharge where there are no updates to the account after the bankruptcy is filed suffers greater harm than if the account were reported as discharged with $0 balance.

24. Defendant Equifax obtained and reported Plaintiff's consumer bankruptcy information in both the Public Records section of her consumer report, as well as for individual account tradelines.

25. Defendant Equifax had notice of Plaintiff's bankruptcy discharge through independent collection of consumer information as well as from information furnished by tradeline furnishers. Equifax reported Plaintiff's bankruptcy filing and/or discharge in the public record section of their consumer reports, as well as in the individual account tradelines.

26. Defendant Equifax is well aware that the effect of a discharge Order in a Chapter 7 Bankruptcy is that all statutorily dischargeable debts, other than those that have been reaffirmed or successfully challenged in an adversary proceeding court, are discharged; both such exceptions are rare and furthermore identified on the individual consumer's bankruptcy docket sheet.

27. Additionally, information regarding whether a debt has been reaffirmed or successfully challenged through an adversary proceeding is retrievable from the same sources from which Equifax voluntarily obtained the bankruptcy information as well as received it from information provided to Equifax from furnishers of account/tradeline information.

28. Upon information and belief, many years ago Equifax implemented a software-based "bankruptcy scrub" procedure which overwrites furnisher reporting that does not accurately reflect an account is discharged with a zero balance once Equifax has received notice of the Chapter 7 discharge.

29. Upon information and belief, many consumers who file Chapter 7 have at least one account which is "current" with a balance and no late payments at the time they file for bankruptcy.

30. Rather than following reasonable procedures to assure maximum possible accuracy, Equifax reports information regarding post-bankruptcy debts even if that information ignores or contradicts information already known by Equifax,

information provided by furnishers of account/tradeline information, and/or information contained in public court records that Defendants have obtained through its independent efforts, or could easily obtain through reasonably available public records.

31. Equifax is on continued notice of its inadequate post-bankruptcy reporting procedures, including inaccurate balances, and account and payment statuses, through the thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints filed against it for its inaccurate reporting a Chapter 7 discharge.

*Allegations Specific to Credit Reporting of Plaintiff*

32. On or about March 13, 2020, Plaintiff filed for a voluntary bankruptcy under Chapter 7 of Title 11 of the Bankruptcy Code, in the Northern District of Georgia (Atlanta), case number 20-64547-pmb.

33. Plaintiff was discharged from her Chapter 7 Bankruptcy on or about June 26, 2020.

34. Upon information and belief following Plaintiff's Chapter 7 Bankruptcy, Equifax prepared one or more consumer reports concerning Plaintiff.

35. Equifax reported Plaintiff's Chapter 7 Bankruptcy case information, including the case number, court, filing date, and discharge.

36. Defendant Equifax reported Plaintiff's credit history, including names of credit

accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, status, and the date of the last status update.

37. Equifax reported at least eight (8) of Plaintiff's other pre-bankruptcy accounts as closed with zero balance and "Included in Bankruptcy."

38. For accounts included in Plaintiff's Chapter 7 Bankruptcy, including collection accounts, Defendant Equifax is generally required to report the status of these debts as discharged through bankruptcy, unless the furnishers provide information showing that a debt was excludable from discharge.

39. Nevertheless, Equifax continued to report inaccurate consumer information on Plaintiff's consumer report, instead of accurately reporting the status of this pre-petition debt as included in or discharged in Chapter 7 Bankruptcy with a $0 balance.

40. Following Plaintiff's bankruptcy discharge, Plaintiff obtained a copy of her Equifax consumer report to ensure her credit account tradelines and bankruptcy were being reported accurately.

41. Equifax reported Plaintiff's Aqua Finance revolving account, 40403** ("Account"), as having a balance owed as of $4,993 as of March 2020 on Plaintiff's consumer report, instead of a $0 balance, and did not include any account status reflecting Plaintiff's bankruptcy.

42. Equifax also reported a "Debt-to-Credit Ratio" of "82%" for the Account.

43. Equifax did not reflect any updates on the Account by Aqua Finance after March 2020, the month that Plaintiff filed her bankruptcy.

44. Equifax inaccurately reported the Account, e.g., that Plaintiff owes money on a discharged account, and also reported an inaccurate status of this Account, thereby damaging her credit worthiness.

45. On or about October 16, 2020, Plaintiff sent a certified letter to Equifax disputing its inaccurate reporting of the Aqua Finance Account.

46. The letter specifically advised that Plaintiff's Aqua Finance account was included in her bankruptcy and listed her Docket number and filing date.

47. Plaintiff also stated that she never lived in Chicago or Florida and those addresses should be removed.

48. Upon information and belief, Equifax forwarded Plaintiff's dispute to the furnisher Aqua Finance.

49. Equifax did not respond to Plaintiff's dispute letter.

50. On or about January 25, 2021, Plaintiff obtained her updated consumer report directly from Equifax.

51. The Account was corrected and reporting as "Included in Bankruptcy" with zero balance.

52. However, Equifax did not remove the erroneous addresses from Florida.

53. Between Plaintiff's bankruptcy discharge and sometime after Plaintiff's dispute in October, Defendant Equifax inaccurately reported the status of this debt, even though the debt was in fact discharged, Plaintiff is no longer personally liable for the debt, and Equifax has actual knowledge Plaintiff filed for and received a Chapter 7 Bankruptcy Discharge.

54. As a result of Defendants' conduct, Plaintiff sustained actual damages including but not limited to, embarrassment, anguish, and emotional and mental pain.

55. Defendants' conduct exacerbated Plaintiff's frustration during the already stressful post-bankruptcy period by hindering Plaintiff's ability to rebuild Plaintiff's credit.

56. Plaintiff was also concerned about the Florida addresses on her report (which Equifax refused to remove) for fear of identity theft.

57. Upon information and belief, had Equifax accurately reported the account as discharged in bankruptcy with a zero balance, Plaintiff's credit score would have been better during the inaccurate reporting period.

58. Upon information and belief, had Equifax accurately reported the account as discharged in bankruptcy with a zero balance, Plaintiff's DTI would have been better during the inaccurate reporting period.

59. Upon information and belief, during the inaccurate reporting period, Plaintiff

applied for and was denied a refinance of her mortgage through Quicken Loans due to Defendants' inaccurate reporting which was published to Quicken Loans in their review of Plaintiff's application. Plaintiff also applied for credit with other creditors.

## COUNT 1

### Defendant Equifax

### (Violations of the FCRA, 15 U.S.C. §1681 e(b))

60. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

61. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

62. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

63. The FCRA requires consumer reporting agencies like Defendant to follow reasonable procedures to assure maximum possible accuracy of consumer information.

64. Defendant negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of information pertaining to discharged debts that arose prior to and were included in the consumer's bankruptcy.

65. Consequently, Defendant routinely report inaccurate, and materially misleading information about Plaintiff, without verifying the accuracy of this information, or updating this information as required by § 1681(e)(b) when Defendant possesses information inconsistent with the reported information, and possesses information establishing that the reported information is in fact inaccurate.

66. The FCRA requires credit reporting agencies, like Equifax to "follow" reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. §1681e(b)

67. Defendant Equifax violated 15 U.S.C. §1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/report, and by also failing to report accurate information when placed on notice that the information Defendant Equifax reported is inaccurate, and/or otherwise contradicted by information known by Equifax, reported to Equifax, or reasonably available to

Equifax.

68. Defendant Equifax knew or should have known of their obligations under the FCRA, especially pertaining to discharged debts. These obligations are well established by the plain language of the FCRA, in promulgations of the Federal Trade Commission, well-established case law, and in prior cases involving Defendants from which Defendants are on notice of their unreasonable procedures concerning the reporting of discharged debts.

69. Upon information and belief, Defendant Equifax regularly conducts voluntary public records searches with the intention of including bankruptcy information on the consumer reports it sells to other parties.

70. Upon information and belief, Defendant Equifax voluntarily conducted public records searches and obtained information about Plaintiff's bankruptcy filing and bankruptcy discharge.

71. The diligence Defendant Equifax exercises in recording consumer bankruptcy filings is not replicated in Equifax's reporting of the effect those orders upon certain accounts, namely, the post-bankruptcy status of the accounts that had balances reporting prior to the consumer's bankruptcy.

72. Defendant Equifax is well aware that the effect of a discharge Order in a no asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or

successfully challenged in an adversary proceeding.

73. Defendant Equifax inaccurately reported Plaintiff's discharged Aqua Finance account with an owed balance, instead of a $0 balance. Equifax failed to accurately report that there is no liability and that this debt was included in and/or discharged in bankruptcy.

74. Defendant possesses information from which Defendant should know the reported information is inaccurate, as Defendant includes the date the consumer filed bankruptcy, whether the consumer obtained a bankruptcy discharge, as well as the date the inaccurate tradeline account/debt arose or was otherwise opened by the consumer.

75. Defendant Equifax negligently and/or willfully violated 15 U.S.C. §1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of information pertaining to discharged debts that were sold or transferred prior to the consumer's bankruptcy.

76. Consequently, Defendant Equifax routinely reports inaccurate, incomplete, outdated, and materially misleading information about Plaintiff, without verifying the accuracy of this information, or updating this information as required by §1681e(b) when Defendant Equifax possesses information inconsistent with the reported information, and possesses information establishing that the reported information is in fact inaccurate.

77. Defendant Equifax knew or should have known of its obligations under the FCRA, especially pertaining to discharged debts. These obligations are well established by the plain language of the FCRA, in promulgations of the Federal Trade Commission, well-established case law, and in prior cases involving CRAs from which Defendant Equifax was on notice of its unreasonable procedures.

78. Defendant Equifax has obtained or has available substantial written materials that apprised Equifax of duties and obligations mandated by the FCRA, including where consumers file for Chapter 7 bankruptcy.

79. Despite knowledge of these legal obligations, Defendant Equifax acted willfully in consciously breaching known duties and deprived Plaintiff of her rights under the FCRA.

80. Equifax violates 15 U.S.C. §1681e(b) by failing to use reasonable procedures to ensure maximum possible accuracy of Plaintiff's consumer disclosure. Equifax allows furnishers like Aqua Finance to report tradelines that are demonstrably inaccurate and outdated on the face of Plaintiff's consumer disclosure. For instance, Defendant Equifax allows furnishers to report that status of debts arising prior to the date of a consumer's bankruptcy as having a balance and/or by omitting information that the account was included in bankruptcy, even though the debt arose prior to the date the consumer's

bankruptcy and was discharged.

81. Equifax possesses information from which it knows the reported information is inaccurate, as Equifax includes the date the consumer filed bankruptcy, whether the consumer obtained a bankruptcy discharge, as well as the date the inaccurate tradeline account/debt arose or was otherwise opened by the consumer.

82. Alternatively, Equifax was negligent, entitling Plaintiff to recover damages pursuant to 15 U.S.C. §1681o.

83. Equifax's inaccurate reporting damaged Plaintiff's creditworthiness and caused damages as described herein.

84. Equifax is a direct and proximate cause, as well as a substantial factor in causing actual damages and harm to Plaintiff.

85. Equifax is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as week as other such relief permitted by 15 U.S.C. §1681 et seq.

86. Consequently, Plaintiff suffers damages, including credit harm, loss of credit opportunity, credit denials, and other financial harm.  Plaintiff also suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

87. As a result of the foregoing violations of the FCRA, Equifax is liable to Plaintiff for actual damages, statutory damages, attorneys' fees and costs, as describe herein and as allowable by law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Yulanda Davis respectfully requests judgment be entered against Defendants for the following:

A. Declaratory judgement that Defendants violated the FCRA

B. Actual damages pursuant to 15 U.S.C. §1681n(a)(1) or §1681o(a)(1);

C. Statutory damages of $1,000.00 pursuant to 15 U.S.C. §1681n(a)(1);

D. Punitive damages pursuant to 15 U.S.C. §1681n(a)(2);

E. Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § §1681n(a)(3) and 1681o(a)(2);

F. Awarding Plaintiff any pre-judgement and post-judgement interest as may be allowed under the law; and

G. Any other relief that this Court deems appropriate.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

Respectfully submitted this 27th day of May 2021.

By:*/s/Jenna Dakroub*
Jenna Dakroub
Bar Number 385021
**Price Law Group**
8245 N. 85th Way
Scottsdale, AZ 85258
E: jenna@pricelawgroup.com
T: (818) 600-5513
F: (818) 600-5413
*Attorneys for Plaintiff*
*Yulanda Davis*